**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 21-cv-03464-RM-NRN

JORDAN PHIPPS,

    Plaintiff,

v.

BRUNKHORST TRUCKING, INC., and
JENSEN TRUCKING COMPANY, INC.,

    Defendants.

___

**ORDER**
___

This matter is before the Court on Defendants' separate Motions for Summary Judgment. For the reasons below, the Court grants in part and denies in part the Motion by Defendant Brunkhorst Trucking, Inc. ("Brunkhorst") and grants the Motion by Defendant Jensen Trucking Company, Inc. ("Jensen").

**I.    BACKGROUND**

This is a negligence action arising out of a collision between a train and a semi-truck at a railroad crossing. The driver of the truck, David McKnight, was employed by Brunkhorst, which also owned the truck. Jensen contracted with Brunkhorst for driving services and leased the truck pursuant to an Independent Contractor Lease Agreement. (ECF No. 48-4.) The Agreement states that Brunkhorst is "an independent contractor," limits Jensen's right to "control the manner or prescribe the method by which [Brunkhorst's] obligations under this Agreement

are performed," and requires Jensen to comply with federal regulations "relating to the leasing of equipment by and operational safety of motor carriers." (*Id.* at 2.)

On the day of the accident, Mr. McKnight drove a truck with a loaded trailer from his home in Peetz, Colorado, to a facility in Cozad, Nebraska, before driving the unloaded trailer to Brunkhorst's terminal in Mitchell, Nebraska. From there, the owner and manager of Brunkhorst, David Brunkhorst, had Mr. McKnight switch trucks and take the truck (with a loaded trailer) that was in the accident. The plan was for Mr. McKnight to drive that truck to his home, where he would be off duty for at least thirty-six hours, and later, to the facility in Cozad. But the accident intervened, killing Mr. McKnight. There is no dispute that his negligence caused the accident. An autopsy report determined Mr. McKnight had illegal drugs in his system.

Plaintiff, the conductor of the train, was seriously injured in the accident, and asserts against each Defendant substantially similar claims for (1) agency, (2) negligence/negligence per se—respondeat superior—vicarious liability, (3) negligent entrustment, and (4) negligent hiring, supervision/training, and retention.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material."  *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### III.  ANALYSIS

#### A.  Brunkhorst's Motion

Brunkhorst seeks partial summary judgment on the first two claims against it, arguing that Plaintiff's agency and respondeat superior claims fail as a matter of law.  Plaintiff contends there are genuine issues of material fact which preclude summary judgment on these claims.  The Court agrees with Plaintiff except to the extent Plaintiff's claims are premised on Jensen's conduct.

To the extent that these claims seek to impose liability on Brunkhorst for the conduct of Mr. McKnight, they both hinge on whether Mr. McKnight was acting within the course and scope of his employment at the time of the accident.  "An employer may be held vicariously liable for an employee's tort only when the tort is committed within the course and scope of employment."  *Moses v. Diocese of Colo.*, 863 P.2d 310, 329 (Colo. 1993).  "The employer is

liable if the employee's conduct was motivated by an intent to serve the employer's interests and connected to acts the employee was authorized to perform." *Suydam v. LFI Fort Pierce, Inc.*, 490 P.3d 930, 934 (Colo. 2020) (quotation omitted). Although "[t]he existence of an agency relationship is ordinarily a question of fact to be determined by the fact finder," a court can decide whether an agency relationship exists as a matter of law if the facts are not in dispute. *Moses*, 863 P.2d at 324. "The control a principal exercises over the manner of work performed by an agent is evidence that an agency relation exists." *Id.*

Brunkhorst contends that at the time of the accident, Mr. McKnight was driving the truck for his own convenience, as a personal conveyance, because his home was not on the route that the truck otherwise would have followed. Brunkhorst further contends that Mr. McKnight was not paid for trips to and from his home and that he was not on duty when the accident occurred. However, there is no dispute that Mr. McKnight left Mitchell with a loaded truck he was expected to deliver to Cozad days later. Nor is it disputed that, as directed by Mr. Brunkhorst, Mr. McKnight took a specific truck for a specific purpose. "An employee is acting within the scope of his employment if he is doing the work assigned to him by his employer, or what is necessarily incidental to that work, or customary in the employer's business." *Id.* at 330. Considering that Brunkhorst's business revolves around transporting trucks and cargo, the Court cannot conclude Mr. McKnight was not furthering Brunkhorst's interests by driving a loaded truck from one location to another—albeit with a detour to his home—with his employer's permission and on a schedule set by his employer.

Plaintiff's reliance on the going-and-coming rule is misplaced in the context of this case. According to that rule, employees traveling between work and home are generally not considered

4

to be within the service of the employers. *See Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693-94 (Colo. App. 2006). But unlike a case where an employee does little to serve the employer's purposes by using a personal vehicle to drive to and from work, here there is evidence that Mr. McKnight was transporting work-related material in a vehicle provided and maintained by his employer and providing his employer with a benefit. *See id.* at 695-69. Nor is this a case where the employee was driving home from and then back to the same work location. Rather, because Mr. McKnight was bringing the truck to a different location, it appears his trip was "of such character or importance that it would have necessitated a trip by someone else if [he] had not handled it in combination with his otherwise personal journey to or from work." *Suydam*, 490 P.3d at 935 (quotation omitted). Thus, the undisputed circumstances are sufficient to create a disputed issue of material fact as to Mr. McKnight's status vis-a-vis Brunkhorst when the accident occurred.

Brunkhorst also contends that it cannot be held liable for Mr. McKnight's conduct because he used illegal drugs in contravention of Defendants' policies. This contention is premised on the undisputed fact that Mr. McKnight's autopsy revealed he had amphetamine, methamphetamine, and THC in his system. But this fact is insufficient to establish that he had wholly abandoned his employer's business for personal reasons, as Brunkhorst argues. (ECF No. 46 at 11.) First, there is no evidence as to when Mr. McKnight used illegal drugs or his level of impairment at the time of the accident. Second, although driving a tractor-trailer while under the influence of illegal drugs may constitute negligence, this does not necessarily mean that the driver is outside the scope of his employment. *See Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1080 (10th Cir. 2010) (applying New Mexico law). Accordingly, the Court finds that the

5

autopsy report alone does not establish that there are no disputed issues of material fact as to whether Mr. McKnight was working within the scope of his employment at the time of the accident.

To the extent Plaintiff's agency and respondeat superior claims against Brunkhorst are based on any conduct by Jensen, Plaintiff has failed to describe any such conduct that would plausibly give rise to liability or to adduce any evidence that Jensen was Brunkhorst's agent or employee. His claims asserted against Jensen directly are addressed below, but in the context of Brunkhorst's Motion, the Court separately concludes that Plaintff has not shown that Brunkhorst may be held vicariously liable for Jensen's conduct.

Therefore, Brunkhorst's Motion is granted in part with respect to his agency and respondeat superior claims to the extent they are asserted against Jensen but otherwise denied, as there are genuine issues of material fact regarding whether Mr. McKnight was acting within the scope of his employment with Brunkhorst at the time of the accident.

### B. Jensen's Motion

#### 1. Vicarious Liability

Jensen argues it is entitled to summary judgment on Plaintiff's agency and respondeat superior claims because he has not shown that Mr. McKnight was its agent or employee. The Court agrees.

The doctrine of respondeat superior is based on the theory that the employee is the agent of the employer, but it "requires a special kind of agency relationship—a master-servant relationship in which the employer has the right to control the employee's performance." *Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005). Thus, respondeat

superior cannot give rise to vicarious liability for negligence of an independent contractor who, unlike an employee, is not subject to the principal's control. *Id.*

There is no dispute that Defendants had a business relationship where shippers retained Jensen to transport cargo, that Jensen contracted with Brunkhorst to transport some of that cargo, paying by the load, or that Mr. McKnight was *Brunkhorst's* employee. As noted above, Defendants' Independent Contractor Lease Agreement defined Brunkhorst's role as that of an independent contractor and explicitly limited Jensen's ability to control the manner or prescribe the method by which Brunkhorst performs its obligations under the Agreement. (ECF No. 48-4 at 2.) Plaintiff's contrary position, that Jensen had the right to control the details of Mr. McKnight's performance, lacks support in the record. Further, Plaintiff concedes that Jensen did not determine the routes Mr. McKnight drove or specifically permit him to drive the truck on the day of the accident. (ECF No. 53 at 14.)

As contemplated by Defendants' Agreement, there is evidence that Jensen monitored Brunkhorst drivers to ensure they complied with federal regulations applicable to motor carriers. There is also evidence that in order to coordinate with shippers and receivers about the timing of deliveries and pickups, Jensen monitored drivers' locations. However, such evidence does not show that Jensen controlled the day-to-day operations of Brunkhorst's business or dictated Mr. McKnight's assignments. Thus, it is insufficient to establish an agency or employment relationship for purposes of imposing vicarious liability on Jensen.

Plaintiff also relies on Jensen's role in hiring drivers. There is no dispute that before drivers could be hired by Brunkhorst, they had to be screened, approved, and deemed insurable by Jensen in accordance with federal motor carrier safety regulations. Jensen's involvement

included handling drug and alcohol screening and monitoring the hours drivers were on duty. And there is evidence that Jensen had the authority to warn and even fire drivers who violated safety regulations. But this does not make Jensen their employer.[1] Plaintiff offers no authority to the contrary. "The central element in an employer-employee relationship is the right of the employer to control the details of performance of the employee's duties." *Perkins v. Reg'l Transp. Dist.*, 907 P.2d 672, 674 (Colo. App. 1995); *see id.* at 675 ("[C]ontrol over the means and methods of accomplishing the contracted-for result is inconsistent with 'independent contractor' status."). Here, the evidence shows that Brunkhorst identified, hired, and supervised its employees, including Mr. McKnight, whose continued employment required them to comply with applicable regulations for truck drivers. In the absence of evidence that Jensen had actual control over or the right to control Mr. McKnight's actions, Jensen is entitled to summary judgment on Plaintiff's first two claims against it.

      2.      <u>Negligent Entrustment</u>

To recover on its negligent entrustment claim against Jensen, Plaintiff must show that (1) Jensen permitted Mr. McKnight to use the truck; (2) the truck was under Jensen's control, and (3) Jensen either knew or should have known that Mr. McKnight was likely to use the truck in such manner as to create an unreasonable risk of harm to others. *See Connes v. Molalla Transp. Sys., Inc.*, 817 P.2d 567, 572 (Colo. App. 1991). Jensen contends that Plaintiff has not established a genuine issue with respect to any of these elements, and the Court agrees.

---

[1] This is so notwithstanding that Mr. McKnight received his pay from Jensen via direct deposit. (*See* ECF No. 70, ¶ 8.10.) Brunkhorst asserts that these payments were made on its behalf, and there is no evidence that this arrangement gave Jensen control over Mr. McKnight's pay or the way he performed his job.

First, Plaintiff has identified no evidence that Plaintiff was aware of, much less permitted, Plaintiff's use of the truck on the day of the accident. The fact that Jensen played a role in assessing Mr. McKnight's qualifications to be and remain hired does not mean it permitted him to drive the truck home on the day of the accident.

Second, although Jensen leased the truck from Brunkhorst, there is no evidence that it was under Jensen's control for purposes of stating a negligent entrustment claim. Defendants' Agreement purported to grant Jensen "exclusive possession and use" of the truck, but it also required Brunkhorst to operate the truck and to pay the costs associated with operating it, including any necessary repairs or maintenance. (ECF No. 48-8 at 1-3.) The Agreement and other relevant circumstances show that the truck was under Brunkhorst's control when Mr. Brunkhorst directed Mr. McKnight drive it.

Third, there is no evidence that Jensen had any reason to believe Mr. McKnight posed an unreasonable risk of harm. On this point, Plaintiff contends that Jensen should have conducted a more thorough examination of Mr. McKnight. But he has not shown that the steps Jensen took to approve his hiring were inadequate or that it had a duty to do more. Nor has he identified or even alleged what information Jensen could have obtained that would have indicated Mr. McKnight posed an unreasonable risk of harm to others. Thus, evidence to support this element of a claim is lacking as well.

3. <u>Negligent Hiring, Supervision, Training, or Retention</u>

To recover on its negligent hiring claim against Jensen, Plaintiff needed to show (1) the existence of a legal duty by Jensen to Plaintiff; (2) breach of that duty by Jensen; (3) injury to Plaintiff; and (4) a sufficient causal relationship between Jensen's breach and Plaintiff's injury.

9

*See Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992). Again, the Court the Court finds Plaintiff has failed to establish a genuine issue as to multiple elements of a claim.

First, the Court has already found there is no evidence that Mr. McKnight was Jensen's employee. Plaintiff offers no authority for the proposition that a legal duty to support a negligent hiring claim could arise in the absence of an underlying employment relationship. Nor has Plaintiff has identified any provision of Defendants' Agreement or any other evidence which suggests Jensen rather than Brunkhorst was responsible for hiring, training, and supervision its employees.

Second, even if such a duty existed in circumstances such as these, where the defendant merely screens an applicant based on pertinent regulations, Plaintiff has not shown that Jensen had a duty to go beyond the background check it performed, which included checking Mr. McKnight's motor vehicle report, contacting his previous employers, and having him pass a pre-employment drug screening. *See Connes*, 817 P.2d at 571 (concluding employer did not owe plaintiff a duty to investigate employee's non-vehicular criminal record). Thus, Plaintiff has adduced no evidence that Jensen breached whatever duty it owed to him.

Third, Plaintiff has not shown a causal connection between the accident and Jensen's alleged failure to perform its duty. In other words, Plaintiff has not identified anything that Jensen could have learned about Mr. McKnight that would have caused him not to be approved for hiring.

## IV. CONCLUSION

Accordingly, Brunkhorst's Motion (ECF No. 46) is GRANTED IN PART and DENIED IN PART, as stated in this Order, and Jensen's Motion (ECF No. 47) is GRANTED.

DATED this 8th day of May, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

11